IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRK ROLAND, | No. C 05-2147 SI |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| JO ANNE B. BARNHART, Commissioner of Social Security | |
| Defendant. | |

Plaintiff Kirk Roland filed this action seeking review of a decision to deny benefits by the Social Security Administration ("SSA"). The parties have filed cross-motions for summary judgment. Having considered the parties' papers and the administrative record, the Court hereby GRANTS plaintiff's motion for remand and DENIES defendant's motion for summary judgment.

**BACKGROUND**

On August 20, 2002, plaintiff Roland filed an application with the SSA for disability benefits, with an alleged disability onset date of May 30, 2001. *See* Tr. 14, 51-53.[1] Plaintiff alleged that he became disabled after a work-related accident, and that he suffered from headaches, inability to sleep or concentrate, severe disc degeneration, traumatic brain injury, and chronic pain. *Id.* at 15, 51, 58. The SSA denied plaintiff's application. *Id.* at 23-26. The SSA also denied plaintiff's request for

---

[1] The administrative transcript contains two different sets of page numbers. This order cites the numbers which are stamped on the page, and are in slightly larger type-face.

reconsideration. *Id*. at 28-31.

Plaintiff then had a hearing before an Administrative Law Judge ("ALJ") on January 22, 2004. *Id*. at 292-335. Plaintiff testified, as did his girlfriend Nancy Pacheco, and a vocational expert, Stephen Davis. *Id*. at 313-24. Plaintiff submitted two letters written by his parents pertaining to plaintiff's mental and physical problems. *Id*. at 94-95. The documentary evidence also included numerous medical records and doctors' reports, including, *inter alia*, a letter from plaintiff's treating physician, Dr. Etemad, stating that plaintiff has traumatic brain injury and lumbosacral disc degeneration, and that he is "limited to a significant degree with respect to sitting, standing, walking, lifting, carrying, concentration, and memory." *Id*. at 166. Dr. Etemad completed a "Medical Source Statement – Physical," in which he found that plaintiff could occasionally lift 10 pounds; that he was able to stand and/or walk with normal breaks less than 2 hours in an 8 hour workday; and that he was able to sit for 2 hours or less in an 8 hour work day. *Id*. at 167. Dr. Etemad concluded that plaintiff's prognosis was "fair to good with treatment; fair to poor with limited to no treatment (which is what he currently receives)." *Id*. at 168.

The record also includes a report by Dr. Kimelman, who conducted an "ortho consultative disability examination" of plaintiff. *Id*. at 169-76. Dr. Kimelman diagnosed plaintiff with a history of head trauma, left shoulder impingement syndrome, neck pain and back pain. *Id*. at 175. Dr. Kimelman concluded, *inter alia*, that plaintiff could frequently lift 20 pounds, and that he could sit and stand up to 2 hours at a time for 6 out of 8 hours in a day. *Id*. at 175-76.

At the hearing, plaintiff's counsel informed the ALJ that plaintiff would submit additional medical records as soon as they were received from the medical facility. *Id.* at 295, 334. Approximately two months after the ALJ's hearing, plaintiff submitted the additional records. *Id.* at 258. The records consisted of occupational and speech therapy reports, and neuropsychology progress reports. *Id*. at 259-91.

On April 30, 2004, the ALJ issued a decision denying plaintiff's claim and finding that plaintiff could perform certain sedentary and unskilled or semi-skilled work. *Id*. at 13-20. The ALJ's decision does not discuss the additional records that plaintiff submitted after the hearing. The ALJ discounted the testimony of plaintiff and his girlfriend as not supported by the objective evidence in the record, and

2

1 he discounted Dr. Edeman's opinion in favor of that of Dr. Kimelman.

2 Plaintiff unsuccessfully appealed the ALJ's decision. *Id*. at 5-8. The Appeals Council's decision states, "[i]n looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We found that this information does not provide a basis for changing the Administrative Law Judge's decision." *Id.* at 5-6. The Council also made the additional medical documentation "part of the record." *Id*. at 8.

**LEGAL STANDARD**

This action comes before the Court for judicial review pursuant to 42 U.S.C. § 405(g) of the Social Security Act. The statute authorizes judicial review "after any final decision of the Commissioner of Social Security." 42 U.S.C. § 405(g). The Court may conduct only a limited review of the final decision and may disturb the decision "only if it is not supported by substantial evidence or if it based on legal error." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Even if substantial evidence supports the ALJ's factual findings, his decision must be set aside if improper legal standards were applied in reaching that decision. *See Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002).

When a reviewing court concludes that the ALJ's findings are based on legal error or not supported by the record, the court may set aside the decision and direct payment of benefits or remand the case for a new hearing. *See Sprague v. Bowen*, 812 F.2d 1226 (9th Cir. 1987). If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. *See Lewin v. Schweiker*, 654 F. 2d 631, 635 (9th Cir. 1981). Where, however, a rehearing would simply delay receipt of benefits, reversal is appropriate. *See id*. The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *See id*.; *see also Sprague*, 812 F.2d at 1232.

**DISCUSSION**

**I.      Additional medical evidence submitted after the hearing**

3

Plaintiff contends that the ALJ erred by failing to consider all of the available medical evidence prior to rendering the decision. Plaintiff notes that the ALJ's decision did not reference any of the medical records that were submitted after the hearing, and argues that the Appeals Council only made a "brief rote mention" of the additional evidence in denying plaintiff's request for review. Plaintiff argues that the ALJ's failure to consider the additional medical records is especially prejudicial because the records corroborate plaintiff's testimony. Specifically, plaintiff contends that the records document months of rehabilitation for plaintiff's traumatic brain injury, including treatment for slowed movements, decreased cognitive ability, and short-term memory loss.

Defendant concedes that the ALJ may not have considered the additional medical records, but argues that plaintiff was not prejudiced because the Appeals Council considered the records and affirmed the ALJ's decision. Defendant contends that the additional medical records were not material because those records primarily summarized plaintiff's statements to his medical providers, and described his response to therapy. Thus, defendant argues, there was no reasonable possibility that the new evidence would have changed the ALJ's decision. Additionally, defendant notes that the additional evidence does not appear to include any findings or reports from medical sources deemed acceptable for the purposes of determining impairment pursuant to 20 C.F.R. § 404.1513(a) (e.g., medical or osteopathic doctors, psychiatrists, or licensed psychologists).

Based upon the record before the Court, the Court cannot conclude that the ALJ would have reached the same decision if he had reviewed the additional documents. The ALJ discounted the testimony of plaintiff, his girlfriend, and his treating physician because their testimony, while credible, was "not supported by the objective evidence of record." Tr. at 17. However, the ALJ did not consider the additional medical records, which covered the period from December 31, 2002 to February 10, 2004, when making these determinations. The fact that the medical records did not come from "acceptable medical sources" listed in 20 C.F.R. § 404.1513(a) does not preclude their consideration. *See* 20 C.F.R. § 404.1513(d) ("In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, [the ALJ] may also use evidence from other sources [such as nurse-practitioners and therapists] to show the severity of [plaintiff's] impairment(s) and how it affects [his] ability to work.").

Particularly in light of the errors discussed *infra*, the Court finds it is in the interest of justice to

4

remand this case for further proceedings to ensure that the ALJ considers the full record when evaluating plaintiff's claims.

## II. Plaintiff's treating physician

The ALJ discounted the opinion of plaintiff's treating physician, Dr. Etemad, stating, "[t]he medical opinion expressed by Dr. Etemad was generally credible, but not to the extent alleged, because it is not supported by the objective evidence of record." Tr. at 17. The ALJ also noted that Dr. Etemad's conclusions were not consistent with plaintiff's admitted abilities. *Id*. The ALJ granted "controlling weight" to the assessment of the examining physician, Dr. Kimelman, and noted that the reviewing DDS physician concurred with Dr. Kimelman's assessment. *Id*.

Generally, greater weight should be given to the opinion of a treating physician than to that of an examining physician. *See Sprague*, 812 F.2d at 1230. As the Ninth Circuit has explained,

> [t]he treating physician's continuing relationship with the claimant makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment.

*Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record for so doing." *Id*. at 831 (internal citation and quotations omitted).

Here, the Court finds that the ALJ did not provide specific and legitimate reasons for discounting Dr. Etemad's opinion. The ALJ generally stated that Dr. Etemad's opinion "is not supported by the objective evidence of record" but did not identify any such evidence or explain how Dr. Etemad's opinion was inconsistent with that evidence. The ALJ also stated that Dr. Etemad's conclusions were inconsistent with plaintiff's admitted abilities, and described those "admitted abilities" as follows:

> His doctor has advised him to walk and he is now up to 40 minutes a day of walking. He finds that he can sit for 25 minutes at a time. When at home, he sits, stands and moves around. He claims that his short term memory is terrible; however this is not supported in the psychological consultative evaluation (Exhibits 7F and 14F). The claimant states that he has driven to Palm Springs which [is] about a 12 hour trip, but notes that he must pull over periodically.

*Id*.

The ALJ's description of plaintiff's testimony contains several errors. First, plaintiff testified that he walks up to 20 minutes a day, not 40. *See id.* at 304 ("[Q] And when you've started – how much do you walk on your daily basis? [A] About 20 minutes and I'm tired."). This is consistent with Dr. Etemad's opinion that plaintiff could stand and/or walk less than 2 hours in an 8 hour workday. *See id.* at 167. Second, it is true that plaintiff testified that he had driven to Palm Springs for medical treatment; however, plaintiff testified that when he made that trip, he split the drive over two days and had to pull over approximately 15 times. *Id.* at 310.[2] This testimony is not necessarily inconsistent with Dr. Etemad's opinion that plaintiff can sit for 2 hours or less in a day, and that he requires alternate standing and sitting. *Cf. Lester*, 81 F.3d at 833 ("Occasional symptom-free periods – and even the sporadic ability to work – are not inconsistent with disability.").[3] Further, plaintiff's testimony that he could sit for approximately 25 minutes before needing to stand, Tr. at 305, is entirely consistent with Dr. Etemad's opinion. Finally, Dr. Etemad's opinion and plaintiff's testimony are consistent regarding plaintiff's poor short term memory and plaintiff's need to alternate sitting, standing and walking around.

In sum, in discounting plaintiff's treating physician's opinion, the ALJ gave reasons that were either general, or at least in part, factually incorrect. On remand, after a review of the entire record, the ALJ may not discount Dr. Etemad's conclusions unless the ALJ articulates "specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 831.

### III.    Plaintiff's credibility

The ALJ found that plaintiff's testimony about his symptoms and resulting limitations was "generally credible but not to the extent alleged." Tr. at 17. The ALJ stated that plaintiff's claim that his short term memory is terrible was not supported by the psychological consultative evaluation. *Id.* In addition, although not completely clear from the ALJ's opinion, the ALJ may have discounted

---

[2] The Court also notes that there is no evidence in the record to support the ALJ's statement that it is a 12 hour drive, and in fact when the ALJ questioned plaintiff about his drive to Palm Springs, the ALJ stated, "I guess it would be about 10 hours." *Id.*

[3] Plaintiff also testified that it was very difficult for him to drive long distances, and that as a result he transferred his medical care from the Haider Spine Center to St. Mary's Medical Center in order to be closer to his doctors. *See* Tr. at 310.

6

plaintiff's testimony based upon plaintiff's "admitted abilities," described *supra*.

"If the ALJ finds the claimant's pain testimony not to be credible, the ALJ must specifically make findings that support this conclusion, and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 884 (9th Cir. 2004) (internal citation and quotations omitted). "If there is no affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of symptoms." *Id*.

For the reasons set forth *supra*, to the extent the ALJ discounted plaintiff's testimony based upon plaintiff's "admitted abilities," the ALJ erred because he mischaracterized plaintiff's actual testimony. To the extent the ALJ discounted plaintiff's testimony because the ALJ gave more weight to the psychological consultative examination, the ALJ may have erred because, in doing so, the ALJ implicitly favored the examining physician's report over Dr. Etemad's conclusions. As discussed *supra*, the ALJ could not discount Dr. Etemad's conclusions without providing specific, legitimate reasons supported by the record. In addition, the Court notes that plaintiff's testimony about his short term memory loss is not necessarily inconsistent with one of the reports cited by the ALJ; Dr. Francis stated that plaintiff was able to recall 4/4 words at a five minute interval, follow three step commands, and that he had greater difficulty with a category naming test which could suggest some mild frontal lobe impairment. Tr. at 196. These findings are not inconsistent with plaintiff's testimony, corroborated elsewhere in the record, that plaintiff experiences difficulty concentrating and suffers from short term memory loss.

On remand, if the ALJ discounts plaintiff's testimony, the ALJ shall provide "specific, cogent reasons for the disbelief." *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).

**IV.    Lay witness evidence**

    **A.    Nancy Pacheco**

Plaintiff also argues that the ALJ failed to properly consider the lay witness evidence offered by plaintiff's girlfriend. At the hearing, plaintiff's girlfriend, Nancy Pacheco, testified about plaintiff's

7

mental and physical problems, in particular noting plaintiff's constant pain and recurring memory problems. Ms. Pacheco testified, *inter alia*,

> [A]fter his accident, he wasn't the same. He was forgetful. He couldn't do things. He couldn't lift his arms over his head to put away groceries or go to the grocery store, and carry grocery bags in. He needed someone to help him . . . .
>
> He's in constant pain. . . . I can see it in his face. He's always talking about how he's in pain. He can't sit, stand, sleep. It's one – it's always non-stop one thing or another. He sits for a little while and he's uncomfortable. He starts moving around. Then, he stands and walks around a little bit, tries to stretch. And physically, sleeping is the worst. He doesn't sleep hardly at all, tossing and turning, getting up during the night, those kinds of things. . . .
>
> He was – before, he was fixing everything. He was always working on something, always putting something together and making models with the children, lockets, you know, working on motorcycles, helping people do their landscaping, just he did everything. [Now] I would ask him to do a chore, but it never gets – it doesn't get done . . . [b]ecause he gets sidetracked. When I ask him to do something, maybe he'll – if I ask him to sweep the kitchen floor, he'll walk in there and he'll forget what he's going to do. . . . He gets distracted and forgets what he – what he's supposed to be doing. . . . He'll start working on something. He'll walk into the room to get an item and forget what he's doing. Make – something simple from, you know, making a recipe, cooking something and the recipe is in front of him, and I'll ask him to just go to get a can of tomatoes from the shelf, and he'll scream from the room, what am I supposed to be doing in here?
>
> . . . If he – well, first, with his memory, a lot of times he'll eat something – let's just say it's a sweet or a cake or something. He'll eat it and he won't remember he ate it and then he'll blame somebody else for eating it. . . . He gets up in the middle of the night and, you know, he'll eat and then he'll – the next day it's done and he'll accuse someone of getting up and eating it, and it's – you know, we all know it's him. He just doesn't remember. . . .
>
> Conversations, for instance, a wedding invitation comes – my brother just got married and I told him we were going to the wedding, and I asked him, you know, what would you like to wear? Should I get you something? And then, a week, you know, before the wedding, I asked him the same thing and he's [sic] say, we're going to a wedding? And then, two days before the wedding, I told him, you know, do you have your clothes ready? And he'd say, for what, you know, and I had to tell him for the wedding. It's the same thing. He – I'll tell him something over and over again and he won't remember.

Tr. 314-19; *see also id.* at 320-24 (additional testimony by Ms. Pacheco).

The ALJ found that Ms. Pacheco's testimony was "credible but not extremely material." *Id.* at 17. The ALJ summarized Ms. Pacheco's testimony as follows:

> Nancy Pacheco, claimant's girlfriend, testified that prior to the claimant's work injury, he was extremely active. She notes that she has lived with him for 2 years, but does not see him during the day. She testified that he does not do much and she claims that his memory is impaired because he forgot about a wedding invitation. Such is not a convincing example and she admits that he did go to the wedding. She notes that the claimant can get scared at a supermarket. Her testimony was credible, but not extremely

8

material.

*Id*. The ALJ also stated that "[t]he claimant's and his witnesses' statements regarding symptoms and resulting limitations are generally credible but not to the extent alleged," and he granted "controlling weight" to Dr. Kimelman's assessment of plaintiff's physical abilities. *Id*.

Lay testimony by individuals in a position to observe a claimant's symptoms may constitute competent evidence. *See Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The Ninth Circuit has stated that "[d]isregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague*, 812 F.2d at 1232 (citing 20 C.F.R. § 404.1513(e)(2)). "[T]he ALJ can reject the testimony of lay witnesses only if he gives reasons germane to each witness whose testimony he rejects." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996). "One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

Defendant argues that the ALJ properly discounted the testimony given by Ms. Pacheco because her testimony conflicted with the medical evidence. As an initial matter, the Court notes that it is not clear that the ALJ in fact rejected Ms. Pacheco's testimony on that basis. The ALJ stated that Ms. Pacheco was credible, but that her testimony was not material, which suggests that he believed her but thought that her testimony was not probative of whether plaintiff was disabled. If the ALJ thought Ms. Pacheco's testimony conflicted with the medical evidence, he was required to specifically identify those contradictions. *See Dodrill*, 12 F.3d at 918. In any event, the ALJ's failure to consider the additional medical records submitted after the hearing rendered the medical evidence in the record incomplete.

Further, the Court finds that the ALJ's summary of Ms. Pacheco's testimony, and the reasons explicitly provided for discounting her testimony, are not supported by substantial evidence. The ALJ stated, "she claims that his memory is impaired because he forgot about a wedding invitation. Such is not a convincing example and she admits that he did go to the wedding." Tr. at 17. In fact, Ms. Pacheco testified that plaintiff repeatedly forgot about the wedding invitation, and that she had to remind him about the wedding several times within a short time period. The fact that plaintiff went to the wedding is irrelevant to the question of whether plaintiff is suffering from memory loss. The ALJ also ignored

9

Ms. Pacheco's testimony in which she provided other examples of plaintiff's memory loss aside from the failure to remember the wedding invitation.

Similarly, the ALJ's statement that Ms. Pacheco noted "the claimant can get scared at a supermarket" is not supported by the record. The Court is unable to find any statement by Ms. Pacheco to this effect. Instead, Ms. Pacheco testified that plaintiff has difficulty carrying grocery bags and lifting his arms over his head to put groceries away. *Id.* at 314, 323-24.

Finally, to the extent the ALJ discounted Ms. Pacheco's testimony because she did not see plaintiff during the day, that is improper. *See Dodrill*, 12 F.3d at 919. Ms. Pacheco testified that she lived with the plaintiff and did not see him between the hours of 7:45 a.m. and 4:15 p.m. when she was at work. *See* Tr. at 316. The fact remains that she saw plaintiff on a daily basis; as the Ninth Circuit has held, such testimony "is of particular value." *Smolen*, 80 F.3d at 1288.

### B.     Plaintiff's parents

Plaintiff's parents submitted two letters in support of plaintiff's application. Tr. at 94-95. In the letters, plaintiff's parents describe how plaintiff had changed since his accident. Plaintiff's father states, *inter alia*, that plaintiff "cannot concentrate on anything for any length of time and does not remember where he puts things and is sometimes totally disoriented because he cannot keep anything in a fashionable order; even a small task does not get completed." *Id*. at 94. Plaintiff's mother states, *inter alia*, "[h]is quick mind is not there anymore. You have to remind him over and over again of [a] conversation you had or how to do something, how to follow directions, because he can't remember." *Id*. at 95. The ALJ did not discuss either of these letters in the opinion.

Defendant contends that the ALJ was free to disregard the parents' statements because both parents live hundreds of miles from plaintiff's residence, and thus only had a limited opportunity to observe his symptoms. Defendant admits, however, that the ALJ did not provide any explanation for disregarding the parents' statements, and it is impossible to determine whether the ALJ considered those statements in making his evaluation. "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." *Dodrill*, 12 F.3d at 918. In addition, the fact

that plaintiff's parents may not have seen plaintiff frequently[4] does not justify wholly discounting the parents' testimony. *See id.* ("[T]he testimony of those who see the claimant less often still carries some weight.").

## V. Hypothetical proffered to the vocational expert

At the hearing, the ALJ posed the following hypothetical to a vocational expert:

> Okay. Assume we have an individual Mr. Roland's age, vocational, educational background. Let's further assume – let's start off with – let's call this hypo number one. He can perform at the light level of exertion, has to have the opportunity to sit at least one half hour to 45 minute basis, should not have to stand or walk more than 30 to 45 minutes, should be – not be required to bend over – to fully bend over, only rare reaching over his head, and no[t] the usual squatting, kneeling or climbing.

Tr. at 326. The ALJ then clarified that, under the hypothetical, the plaintiff could not be required to stand or walk more than 30 to 45 minutes continuously within a day. *Id.* at 327. In response, the vocational expert stated that a person with the described limitations could perform the jobs of laminator, key cutter, semi-conductor assembler, and coater of brake linings. *Id.* at 327-28. The ALJ found, based on the vocational expert's testimony, that "there are a significant number of jobs in that national economy that [plaintiff] could perform," including laminator and semi-conductor assembler. *Id.* at 20.

The parties agree that the ALJ's hypothetical implicitly rejected Dr. Etemad's conclusions, as well as the testimony of plaintiff and his girlfriend regarding his limitations. On remand, if the ALJ poses a hypothetical to a vocational expert, it must be based upon "medical assumptions supported by substantial evidence in the record that reflects all the claimant's limitations." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The ALJ must determine the scope of plaintiff's limitations after a full review of the record consistent with this order.

## CONCLUSION

This court has discretion to remand a case for further evidence or to award benefits. *Moore v. Comm'r Soc. Security Admin.*, 278 F.3d 920, 926 (9th Cir. 2002). Evidence should be credited and an

---

[4] The Court notes that the parents' letters do not state how often they were in contact with their son.

11

immediate award directed where "(1) the ALJ failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Smolen*, 80 F.3d at 1292.  Here, the Court cannot conclude as a matter of law that plaintiff meets or equals an impairment listed in 20 C.F.R. § 404, Subpt. P, App. 1 (2006).  Accordingly, remand is appropriate to allow the ALJ to reconsider plaintiff's application in accordance with this order.

For the foregoing reasons, the Court GRANTS plaintiff's motion and REMANDS this action, and DENIES defendant's motion for summary judgment.  (Docket Nos. 21, 25).

**IT IS SO ORDERED.**

Dated: February 24, 2007

SUSAN ILLSTON
United States District Judge